## A. H. Woods Theatre, Appellant, v. North American Union, Appellee.

### Gen. No. 31,716.

1. LANDLORD AND TENANT—*rules on lease as not covenants liable to be breached by lessor*. Rules in a lease, which are expressly made applicable only to the premises demised by the lease and to the lessee thereof, that no person shall disturb the occupants of the building or any adjoining premises by the use of musical instruments and that the lessor reserves the right to make other rules and regulations which shall be binding on all parties, are merely restrictions for the regulation of tenants and are not covenants by the lessor for the benefit of all tenants which are subject to breach by the lessor leasing other rooms in the building to persons using musical instruments to the distraction of the employees of the particular tenant, particularly where the lease reserves to the lessor the right to grant to anyone the privilege to conduct any particular business in the building.

2. LANDLORD AND TENANT—*liability of landlord for conduct of tenant*. As a general rule a landlord is not responsible for the conduct of tenants acting within their rights in their own premises.

3. LANDLORD AND TENANT—*constructive eviction defined*. There is a constructive eviction where the premises leased are rendered useless to the tenant or the tenant is deprived, in whole or in part, of the possession and enjoyment as a result of the wilful or wrongful act of the landlord.

4. LANDLORD AND TENANT—*permitting acts by one tenant as constructive eviction of another*. There is a constructive eviction where a landlord authorizes one tenant to do upon his premises acts whose natural consequence is to injure another tenant.

5. LANDLORD AND TENANT—*permissive playing of musical instruments by one tenant as constructive eviction of another.* A landlord by leasing rooms in an office building to music publishers did not constructively evict, by an alleged violation of an implied covenant of quiet enjoyment, another tenant whose employees are distracted in their work by the singing and piano playing on the premises of the music publishers, whose lease barred the use of musical instruments in reception rooms and confined it to rooms facing the streets.

6. LANDLORD AND TENANT—*implied covenant to lease only to tenants conducting a quiet business.* The plan of management of an office building to make leases to tenants conducting quiet and businesslike offices held not an implied covenant that the plan would be continued so that a lease would not be made to a music publisher, who had singing and piano playing to the distraction of the work of employees of another tenant, it appearing that a large part of the building was occupied by a theater and that the theatrical name of the lessor might suggest that leases of space would likely be made to persons in allied businesses.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. ROBERT E. GENTZEL, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1927. Reversed with a finding of fact. Opinion filed December 12, 1927. Rehearing denied December 27, 1927.

RYAN, CONDON & LIVINGSTON, for appellant; DAVID J. GREENBERG and JOHN M. TUOHY, of counsel.

BRANNAN, MARKMAN & MALONEY, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

A. H. Woods Theatre, a corporation, plaintiff herein, by virtue of a power of attorney in a lease to the North American Union, a corporation, defendant herein, took judgment for rent for May, June and July, 1926, and attorneys' fees for $1,482.49. On motion supported by affidavits the judgment was vacated and the cause was tried on its merits by the court, resulting in a judgment for the defendant, from which plaintiff appeals.

The lease was for certain rooms on the tenth floor of the building known as the Woods Building, in the city of Chicago, for a term of five years, beginning May 1, 1923, and ending April 30, 1928.  Defendant vacated the premises on April 30, 1926, claiming a constructive eviction by reason of an alleged breach of the lease by the lessor in renting rooms in the building to persons who used musical instruments, thus depriving defendant of the quiet enjoyment of the premises leased to it.

The portions of the lease relative to the point in issue are as follows:

Clause 8.  "It is mutually agreed that all the rules and regulations printed upon the back of this instrument shall be and are hereby made a part of this lease, and the lessee covenants and agrees that he and his servants and agents will at all times observe, perform and abide by said rules and regulations."

Clause 19 provides that the lessee shall not use the premises for certain purposes "without the written consent of the lessor, the right being hereby reserved to the lessor to grant to any person, firm or corporation, the exclusive right and privilege to conduct any particular business in said building, and such exclusive right and privilege so granted shall be binding upon the lessee hereunder the same as though specifically incorporated in this lease."

Upon the back of the instrument are printed 20 rules under the following heading:  "RULES AND REGU-LATIONS (Applicable only to the premises demised by the within lease and to the lessee thereof.)"  Thereunder is rule 18 as follows:

"No person shall disturb the occupants of this or any adjoining building or premises by the use of any musical instrument, unseemly noises, whistling, singing or in any other way."

And rule 20:

"The lessor reserves the right to make such other and further reasonable rules and regulations as in his judgment may from time to time be needful for the safety, care and cleanliness of the premises, and for the preservation of good order therein, and any such other or further rules and regulations shall be binding upon the parties hereto with the same force and effect as if they had been inserted herein at the time of the execution hereof."

All the leases of space in the building contained similar provisions except the leases to certain musical publishers made subsequent to the lease to defendant. In these leases were provisions permitting the use of pianos and other musical instruments with reservations as to the rooms in which they might be played.

The trial court was of the opinion that rules 18 and 20 aforesaid were covenants on the part of the lessor, made for the benefit of all the tenants, and that the lessor by leasing to persons using musical instruments in their business breached these covenants and defendant was warranted in vacating the premises. We do not concur in this view. Rules 18 and 20 are expressly made applicable only to the premises demised by the lease and to the lessee thereof, while under clause 19 of the lease the right was reserved to the lessor to grant to anyone "the right and privilege to conduct any particular business in said building."

These rules are simply restrictions for the regulation of the tenants. They are not covenants by the lessor. A landlord would hardly covenant that no tenant should disturb any other tenant by whistling, singing, or in any other way. As a general rule a landlord is not responsible for the conduct of tenants acting within their rights in their own premises. If the lessee desired an express stipulation or covenant on the part of the landlord touching the conduct of other tenants, it should have been incorporated in the lease.

It is argued that, aside from the point on which the trial court decided the case, the evidence shows a constructive eviction by the landlord in permitting singing and playing of pianos in portions of the building which interfered with defendant's business, thus violating an implied covenant of quiet enjoyment. There is evidence that the tenants in the musical business had pianos and employed demonstrators who taught persons coming to their premises how to sing songs and that such pianos were operated from eleven o'clock in the morning until five-thirty in the evening; that this was heard by employees of the defendant company so that at times they would close the windows in order not to be disturbed; that the sounds of the music reduced the efficiency of the office force, as the minds of the employees were more on the music than on the work of the defendant; that defendant had about 3,000 men, women and children coming to its office each month for the purpose of paying premiums, and that some of them complained that the hallways were crowded and that at times certain of these tenants instructed performers how to dance in the hallway between the elevators and the doors of defendant's premises.

There was evidence by other tenants contradicting that of the defendant with reference to the noise and disturbance.

There is a constructive eviction where the premises leased are rendered useless to the tenant or the tenant is deprived, in whole or in part, of the possession and enjoyment as a result of the wilful or wrongful act of the landlord. It has also been said that the act of the landlord must be wrongful, evidencing an intention on his part to deprive the tenant of the use of the demised premises. Such intention, however, may be inferred from acts of the landlord justifying or warranting the tenant in leaving the premises. *Barrett v. Boddie,* 158 Ill. 479; *Hartenbauer v. Brumbaugh,* 220

Ill. App. 326; *Gibbons v. Hoefeld,* 299 Ill. 455. Where the landlord authorizes one tenant to do upon the premises acts whose natural consequence is to injure another tenant, there is a constructive eviction. *Wade v. Halligan,* 16 Ill. 507, 21 Ill. 470; *Case v. Minot,* 158 Mass. 577, 33 N. E. 700; *Kesner v. Consumers Co.,* 239 Ill. App. 92; *Duff v. Hart,* 40 N. Y. St. Rep. 676; *Curran v. Cushing,* 197 Ill. App. 371.

Most of these cases, involve facts showing that the landlord knowingly leased the premises or permitted the same to be used for purposes in themselves unlawful or a nuisance or dangerous to other occupants of the building. Typical of such cases is *Wade v. Halligan,* 16 Ill. 507, 21 Ill. 470, where tenants were occupying part of the premises as a hotel. Other parts were leased to a saloon, a tin and sheet iron factory and a bake shop, respectively. The court described these new tenants as causing "disorderly, indecent, vulgar and obscene conduct and noises of the drunken, and the noise of manufacturing tin and sheet iron or heat, smoke and danger of fire from a bake oven." In another case the new tenancy was a laundry; in another, the premises were leased for the storage of moving picture films, creating a dangerous fire hazard.

There is a marked difference between the character of such tenantry and that in the present case. Here, the most serious objection is the tendency of the music to distract defendant's employees. There is no evidence of any loss of business. Leases to music publishers are customary and usual in office buildings. The disturbance caused thereby is not so far different from the disturbance caused by the usual noises in Chicago buildings. While we might admit the annoyance to defendant caused by them, yet we are not prepared to hold that the sounds made by them, under the permission of the landlord, amount to a constructive eviction. The evidence shows that the restrictions in the leases to the music publishers barred the use

of musical instruments in reception rooms and confined it to rooms facing the streets, all with the purpose of lessening the sounds reaching other tenants. There was an absence of any actual intention to dispossess the defendant, and we cannot say that the circumstances were such as to justify any inference that such was his intention. Cases tending to support our conclusion are *Stewart v. Lawson,* 199 Mich. 497, 165 N. W. 716; 18 Eng. & Am. Encyc. of Law, p. 220; Jones on Landlord and Tenant, p. 360; *Tucker v. Du-Puy,* 210 Pa. 461; *Toy v. Olinger,* 173 Wis. 277; *Briscoe v. Tabor,* 204 Ill. App. 440.

There is no evidence that the landlord was a party to the alleged overcrowding of the halls.

It is said that the plan of management of the building prior to the leasing was an implied covenant that the plan would be continued; that prior to the instant leasing the building was leased to tenants conducting quiet and businesslike offices, but that this character of tenantry was changed by renting to people in the musical or theatrical business. Two supporting English cases are cited. In one of them—*Gedge v. Bartlett,* 17 T. L. R. 43—a property devoted exclusively to residential purposes was changed in part to leases to the government for public offices. In the other case —*Alexander v. Mansions Proprietary,* Law Times Reports, Vol. XVI, 431—a property used exclusively for private residences was leased in part for hotel purposes. Even if we concede the rule, although no supporting cases in the United States are presented, yet the facts in the English cases are different from those before us in that (1) there was a distinct departure from the character of the prior occupancy of the premises, and (2) in neither of them was the question .of constructive eviction involved. It is pertinent in this connection to note that the building in question was not occupied exclusively by offices, but a large part of the same was occupied by a theatre. This fact

and the name of the lessor, A. H. Woods Theatre, a corporation, might well suggest to the defendant that leases of space would likely be made to persons engaged in businesses allied with the theatre business.

There is something said concerning inadequate elevator service, but it is not seriously contended that the facts in this respect amounted to a constructive eviction. There was considerable evidence showing that the elevator service, while crowded at times, was on the whole adequate.

For the reasons above indicated the judgment of the trial court is reversed and the judgment originally entered is confirmed.

*Reversed with a finding of fact.*

MATCHETT, P. J., and O'CONNOR, J., concur.

Finding of fact: We find as a fact that the lessor, the plaintiff herein, committed no acts with reference to the occupancy of the premises leased to the defendant which amounted to a constructive eviction and justified the defendant in vacating the same.