ARTHUR B. BLACKETT & others[1] *vs.* JERROLD OLANOFF
(and a companion case[2]).

Suffolk.    October 7, 1976. — January 13, 1977.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Landlord and Tenant,* Eviction, Quiet enjoyment.

Where landlords of a residential building leased to others a nearby
    building for use as a bar and cocktail lounge with the result that the
    residential tenants were subjected to loud music and disturbances
    into the early morning hours and where the landlords had the abil-
    ity to control the objectionable conditions but failed to do so, the
    landlords breached the residential tenants' implied warranty of quiet
    enjoyment.    [715-718]

CONTRACT.    Writs in the Municipal Court of the City of
Boston dated October 3, 1972.

Upon transfer by the defendants to the Housing Court
of the City of Boston, the cases were heard by *Garrity,* J.

*Philip S. Lapatin* for the plaintiffs.

*Sally A. Corwin (Jon C. Mazuy* with her) for the defend-
ants.

WILKINS, J.    The defendant in each of these consoli-
dated actions for rent successfully raised constructive evic-
tion as a defense against the landlords' claim. The judge
found that the tenants were "very substantially deprived"
of quiet enjoyment of their leased premises *"for a substan-
tial* time" (emphasis original). He ruled that the tenants'
implied warranty of quiet enjoyment was violated by late
evening and early morning music and disturbances coming

---

[1] Arthur B. Blackett, Charles W. Brown, Third, Konrad Gesner, and
Bencion Moskow, trustees of Blue Water Trust, doing business as Com-
mercial Wharf Properties Co. The plaintiffs will be referred to herein
as the landlords.

[2] Arthur B. Blackett & others *vs.* Paul DiMaura.

from nearby premises which the landlords leased to others for use as a bar or cocktail lounge (lounge). The judge further found that, although the landlords did not intend to create the conditions, the landlords "had it within their control to correct the conditions which . . . amounted to a constructive eviction of each [tenant]." He also found that the landlords promised each tenant to correct the situation, that the landlords made some attempt to remedy the problem, but they were unsuccessful, and that each tenant vacated his apartment within a reasonable time. Judgment was entered for each tenant; the landlords appealed; and we transferred the appeals here. We affirm the judgments.

The landlords argue that they did not violate the tenants' implied covenant of quiet enjoyment because they are not chargeable with the noise from the lounge. The landlords do not challenge the judge's conclusion that the noise emanating from the lounge was sufficient to constitute a constructive eviction, if that noise could be attributed to the landlords.[3] Nor do the landlords seriously argue that a constructive eviction could not be found as matter of law because the lounge was not on the same premises as the tenants' apartments. See 1 American Law of Property § 3.51, at 281 (A.J. Casner ed. 1952). The landlords' principal contention, based on the denial of certain requests for rulings, is that they are not responsible for the conduct of the proprietors, employees, and patrons of the lounge.

Our opinions concerning a constructive eviction by an alleged breach of an implied covenant of quiet enjoyment sometimes have stated that the landlord must perform some act with the intent of depriving the tenant of the enjoyment and occupation of the whole or part of the

---

[3] There was evidence that the lounge had amplified music (electric musical instruments and singing, at various times) which started at 9:30 P.M. and continued until 1:30 A.M. or 2 A.M., generally on Tuesdays through Sundays. The music could be heard through the granite walls of the residential tenants' building, and was described variously as unbelievably loud, incessant, raucous, and penetrating. The noise interfered with conversation and prevented sleep. There was also evidence of noise from patrons' yelling and fighting.

leased premises. See *Katz* v. *Duffy,* 261 Mass. 149, 151-152 (1927), and cases cited. There are occasions, however, where a landlord has not intended to violate a tenant's rights, but there was nevertheless a breach of the landlord's covenant of quiet enjoyment which flowed as the natural and probable consequence of what the landlord did, what he failed to do, or what he permitted to be done. *Charles E. Burt, Inc.* v. *Seven Grand Corp.,* 340 Mass. 124, 127 (1959) (failure to supply light, heat, power, and elevator services). *Westland Housing Corp.* v. *Scott,* 312 Mass. 375, 381 (1942) (intrusions of smoke and soot over a substantial period of time due to a defective boiler). *Shindler* v. *Milden,* 282 Mass. 32, 33-34 (1933) (failure to install necessary heating system, as agreed). *Case* v. *Minot,* 158 Mass. 577, 587 (1893) (landlord authorizing another lessee to obstruct the tenant's light and air, necessary for the beneficial enjoyment of the demised premises). *Skally* v. *Shute,* 132 Mass. 367, 370-371 (1882) (undermining of a leased building rendering it unfit for occupancy). Although some of our opinions have spoken of particular action or inaction by a landlord as showing a presumed intention to evict, the landlord's conduct, and not his intentions, is controlling. See *Westland Housing Corp.* v. *Scott, supra* at 382-383.

The judge was warranted in ruling that the landlords had it within their control to correct the condition which caused the tenants to vacate their apartments. The landlords introduced a commercial activity into an area where they leased premises for residential purposes. The lease for the lounge expressly provided that entertainment in the lounge had to be conducted so that it could not be heard outside the building and would not disturb the residents of the leased apartments. The potential threat to the occupants of the nearby apartments was apparent in the circumstances. The landlords complained to the tenants of the lounge after receiving numerous objections from residential tenants. From time to time, the pervading noise would abate in response to the landlord's complaints. We conclude that, as matter of law, the landlords had a right

to control the objectionable noise coming from the lounge and that the judge was warranted in finding as a fact that the landlords could control the objectionable conditions.

This situation is different from the usual annoyance of one residential tenant by another, where traditionally the landlord has not been chargeable with the annoyance. See *Katz* v. *Duffy*, 261 Mass. 149 (1927) (illegal sale of alcoholic beverages); *DeWitt* v. *Pierson*, 112 Mass. 8 (1873) (prostitution).[4] Here we have a case more like *Case* v. *Minot*, 158 Mass. 577 (1893), where the landlord entered into a lease with one tenant which the landlord knew permitted that tenant to engage in activity which would interfere with the rights of another tenant. There, to be sure, the clash of tenants' rights was inevitable, if each pressed those rights. Here, although the clash of tenants' interests was only a known potentiality initially, experience demonstrated that a decibel level for the entertain-

---

[4] The general, but not universal, rule in this country is that a landlord is not chargeable because one tenant is causing annoyance to another (*A.H. Woods Theatre* v. *North American Union*, 246 Ill. App. 521, 526-527 [1927] [music from one commercial tenant annoying another commercial tenant's employees]), even where the annoying conduct would be a breach of the landlord's covenant of quiet enjoyment if the landlord were the miscreant. See *Paterson* v. *Bridges*, 16 Ala. App. 54, 55 (1917); *Thompson* v. *Harris*, 9 Ariz. App. 341, 345 (1969), and cases cited; 1 American Law of Property § 3.53 (A.J. Casner ed. 1952); Annot., 38 A.L.R. 250 (1925). Contra, *Kesner* v. *Consumers Co.*, 255 Ill. App. 216, 228-229 (1929) (storage of flammables constituting a nuisance); *Bruckner* v. *Helfaer*, 197 Wis. 582, 585 (1929) residential tenant not liable for rent where landlord, with ample notice, does not control another tenant's conduct).

The rule in New York appears to be that the landlord may not recover rent if he has had ample notice of the existence of conduct of one tenant which deprives another tenant of the beneficial enjoyment of his premises and the landlord does little or nothing to abate the nuisance. See *Cohen* v. *Werner*, 85 Misc. 2d 341, 342 (N.Y. App. T. 1975); *Rockrose Assocs.* v. *Peters*, 81 Misc. 2d 971, 972 (N.Y. Civ. Ct. 1975) (office lease); *Home Life Ins. Co.* v. *Breslerman*, 168 Misc. 117, 118 (N.Y. App. T. 1938). But see comments in *Trustees of the Sailors' Snug Harbor in the City of New York* v. *Sugarman*, 264 App. Div. 240, 241 (N.Y. 1942) (no nuisance).

A tenant with sufficient bargaining power may be able to obtain an agreement from the landlord to insert and to enforce regulatory restrictions in the leases of other, potentially offending, tenants. See E. Schwartz, Lease Drafting in Massachusetts § 6.33 (1961).

ment at the lounge, accoustically acceptable to its patrons and hence commercially desirable to its proprietors, was intolerable for the residential tenants.

Because the disturbing condition was the natural and probable consequence of the landlords' permitting the lounge to operate where it did and because the landlords could control the actions at the lounge, they should not be entitled to collect rent for residential premises which were not reasonably habitable. Tenants such as these should not be left only with a claim against the proprietors of the noisome lounge. To the extent that our opinions suggest a distinction between nonfeasance by the landlord, which has been said to create no liability (P. Hall, Massachusetts Law of Landlord and Tenant §§ 90-91 [4th ed. 1949]), and malfeasance by the landlord, we decline to perpetuate that distinction where the landlord creates a situation and has the right to control the objectionable conditions.

*Judgments affirmed.*