Per Curiam.
This is an action by the plaintiffs as tenants to recover damages for the defendant’s clear violation of G. L. c. 186, § § 14,19; intentional infliction of emotional distress and breach of the covenant of quiet enjoyment. The defendant filed a counterclaim, unsupported by the evidence ultimately adduced at trial, for the plaintiff’s alleged abandonment of the leased premises, extreme vandalism and waste.
The trial court entered judgment for the plaintiffs in the sum of $41,000.00 for loss of use and occupancy, emotional distress, breach of the covenant of quiet enjoyment and attorneys’ fees. The court also properly found for the plaintiffs on the defendant’s counterclaims.
The 'reported evidence indicates that defendant Freeman, a professional land developer and house builder, purchased a large tract of land in Lexington, Mass, from the plaintiffs. Pursuant to an August 25, 1980 amendment of the parties’ Purchase and Sale Agreement, the defendant leased back to the plaintiffs their home and the immediate land upon which it was situated. (Designated in the defendant’s subdivision plan as Lot 41). The lease provided for rent in the form of real estate taxes, water charges and insurance premiums upon the plaintiffs’ home; and was to expire within five years or upon the plaintiffs’ death, whichever occurred first. The lease also granted the plaintiffs a right of way to and from their premises and the continued use of the well which serviced their home.
The plaintiffs’ home was a sixty year old frame farmhouse which was *151 sparsely furnished and in need of papering and painting. Plaintiffs Tomaso and Maria Schena were in their eighties, had occupied the farmhouse for over forty years and had raised all of their children there.
Defendant Freeman signed a purchase mortgage note under which he was obligated to make quarterly payments to the Schenas through their attorney, Mr. Tropeano. In 1981, Freeman began deducting from these mortgage .payments the taxes owed by the Schenas as rent. On December 12, 1981, Freeman insured the leased premises for $70,000.00 under a policy which •covered all losses, and began deducting the insurance premiums from the mortgage payments due to the plaintiffs. The plaintiffs had previously insured their home for $17,000.00.
Both plaintiffs occupied their home subject to the lease from August 25, 1980 to July, 1982. Tomaso Schena then became ill, was hospitalized and thereafter recuperated in his daughter’s home in North Billerica. Maria Schena and the plaintiffs’ adult son continued to reside in the farmhouse. Two . of the plaintiffs’ daughters visited the house weekly and Tomaso Schena visited occasionally. There was apparently no evidence of such visits in January or February, 1983.
Maria Schena went to stay with one of the plaintiffs’ daughters on Thanksgiving Day, 1982. The utilities were not, however, shut off at the farmhouse; the electricity was never turned off; the telephone was not disconnected and mail service was never discontinued. Deliveries of propane gas and oil continued to be made to the farmhouse.
In February, 1983, Freeman asked plaintiffs’ attorney, Tropeano, if the plaintiffs intended to move out of the farmhouse. Mr. Tropeano stated that they planned to remain on the premises, that the Schenas and their adult son would be returning to the house and that Mrs. Schena intended to die in her home. On March 2, 1983, Freeman nevertheless informed the Town of Lexington Health Director, George Smith, that the house was abandoned and should be condemned as a safety and health hazard. Without securing permission from the Schenas or their attorney, defendant Freeman and George Smith entered the premises on March 2, 1983 and conducted an inspection.
Mr. Smith found the interior of the house to be in a vandalized, uninhabitable condition. He ordered Freeman to uncover a septic line and water line to the well. Freeman instead utilized a backhoe to uncover not the lines designated by the inspector, but a waste line. Smith consequently examined the wrong line and determined that the property was in violation of local codes. The house was condemned by the Town of Lexington on March 8, 1983, and thereafter boarded up by Freeman.
Prior to March 2,1983, there was evidence of extensive foundation and road excavation work by the defendant’s crews in front of the Schenas’ home on Lot 41. On March 11, 1983, Mr. Tropeano received a copy of the condemnation order, and proceeded to inspect the leased premises. He found the right of way to the plaintiffs’ home completely blocked and he was unable to drive through the muddy terrain of an uncompleted roadway to gain any access to Lot 41. Mr. Tropeano advanced on foot to the plaintiffs’ home and discovered bulldozer tracks leading immediately up to the house foundation, which had been chipped; strips of loosened putty on the exterior window sills; broken window glass on the ground; dirt in the bulkhead; and the well exposed and partially filled with dirt. The entire lot leased to the plaintiffs had been bulldozed. Mr. Tropeano did not enter the house.
Mr. Tropeano later requested that Freeman file a claim for vandalism for the *152 interior house damage with the insurance carrier under the policy which covered all losses. Freeman told the insurance broker that the house had been ■ vacant since November, 1982, and the broker then stated that the insurance carrier would deny the claim because of such vacancy. Freeman did not' pursue the claim beyond the broker. On April 29,1983, Freeman cancelled the insurance policy with an effective cancellation date of May 29,1983. On May 7, 1983, the house was mysteriously burned to the ground and Freeman, bulldozed over the foundation. Freeman did not file a claim of loss with the insurance carrier. In August, 1980, upon execution of the parties’ lease,. Freeman had informed Mr. Tropeano that he did not intend to fix the plaintiffs’ house, but planned to “put a bulldozer to it” as it would not fit in with • other houses in the subdivision plan.
Photographs of the houses built and sold by the defendant were introduced' into evidence, and there was testimony that houses near Lot 41 were sold for $280,000.00.
Plaintiff Maria Schena was unable to attend the trial due to illness. The report states that plaintiff Tomaso Schena testified that he had wanted to return to his home and plant his garden, but was unable to do so.
The trial court entered extensive subsidiary findings, which included the following:
1. the premises were never abandoned by the plaintiffs.
2. the plaintiffs were not responsible for any damages to the premises.
3. the defendant and/or his agents, trespassed upon the premises which had been leased to the defendants and caused the damage to their home so as to make it unlivable.
4. the plaintiffs were under no obligation to rebuild the house which was mysteriously destroyed by fire, more particularly whereas the defendant cancelled the insurance on the house and never filed a claim for fire damage under a policy which was still in effect on the date of the fire (the policy termination date being May 28,1983).
5. [the court] finds for the plaintiffs on Count I in the sum of $18,000.00 for loss of use and occupancy and $10,000 each for emotional distress and breach of quiet enjoyment; in a total amount of $38,000 plus $3,000 in attorney fees.
The defendant thereafter sought an appeal to this Division on a charge of error in the trial court’s disposition of his requested rulings of law and in the court’s denial of his Dist./Mun. Cts. R.' Civ. P., Rule 59 motion for a new trial.
1. The defendant expressly waived in oral argument any claim of error in the trial justice’s disposition of his requested rulings which were submitted at the close of the evidence in the lower court. Even in the absence of such waiver, the defendant would not have been entitled to appellate consideration of these requested rulings. Rule 64 (f) of the Dist./Mun. Cts. R. Civ. P. unequivocally states that “the Appellate Division need not pass upon questions or issues not argued in briefs.” As the defendant failed to submit written argument on either the disposition of requests numbers 1, 2, 4, 5, 7 and 10, or on the denial of his new trial requests numbers 9 and 10, he has forfeited any right to appellate review thereof. Board of Appeals, Maynard v. Housing App. Comm., 370 Mass. 64, 68 (1976); Travelers Ins. Co. v. Safeguard Ins. Co., 346 Mass. 622.623 (1964); Multicar Leasing Co. v. Presidential Ins. Agency, Inc., 1982 Mass. App. Div. 271.
2. The scope of the defendant’s appeal would ordinarily have been further circumscribed by the familiar maxim that questions which could have been *153 raised at trial cannot as of right be presented on a motion for a new trial. Haines Corp. v. Winthrops Sq. Cafe, Inc., 335 Mass. 152, 154 (1956); Belkus v. Murdoch, 315 Mass. 86, 87 (1947). This Division would then have employed the customary abuse of discretion standard to review the trial court’s denial of the defendant’s new trial motion. See, e.g., Fialkaw v. De Voe Motors, Inc., 359 Mass. 569, 576 (1971); Koller v. Duggan, 346 Mass. 270, 273-274 (1963). Although not required to do so, the trial justice herein elected, however, to rule on each of the requests submitted in conjunction with the defendant’s Rule 59 motion. Compare, Daddario v. Gloucester, 329 Mass. 297, 301 (1952); Wood v. New England Film Serv., Inc., 32 Mass. App. Dec. 98, 103-103 (1965). It is thus necessary to consider the court’s disposition of defendant’s new trial requests numbers 1 through 8.
3. It is sufficient for the purposes of decision to limit our analysis to requests numbers 5, 7 and 8 which were filed with the defendant’s new trial motion. These requests charge the trial court with error in its computation and award of damages.
In consideration of the defendant’s requests, we find that the spectre of an impermissible, duplicate recovery arose herein from the court’s simultaneous award of use and occupancy damages and “$10,000 each” for the defendant’s breach of the covenant of quiet enjoyment and intentional infliction of emotional distress. See Simon v. Solomon, 385 Mass. 91, 109 (1982); Darmetko v. Boston Housing Auth., 378 Mass. 758, 761 (1979). The report also fails to disclose any factual basis for the court’s assessment of $3,000.00 in attorneys’ fees. See Weinstein v. Steigman, 1983 Mass. App. Div. 288. Accordingly, the trial court’s judgment for the plaintiff must be vacated.
4. An entry of judgment for the defendant herein would, however, violate not only principles of law, but also standards of fairness, equity and decency. The report is replete with evidence of unconscionable, culpable conduct by the defendant which seriously impaired the plaintiffs’ rights. Nor is our holding in this case equivalent to a ruling that the damages awarded by the trial court were necessarily excessive or even sufficient compensation as a matter of law for the actual harm suffered by the plaintiffs. The full extent of the defendant’s liability is a question uniquely within the province of a trial court, and can be determined only upon a complete, evidentiary submission by the plaintiffs. An opportunity for the same and for full damages is in order.
The defendant has requested a new trial and, in the interests of justice, a new trial on the plaintiffs’ claims is hereby ordered. G.L.c. 231, § 110; Via v. Asbestos Textile Co., 335 Mass. 210, 215-16 (1957). The trial court’s judgment for the plaintiffs on the defendant’s counterclaims is affirmed, and the new trial shall exclude consideration of these matters. To assist the trial court in effecting an expeditious resolution of this matter, the following examination of the elements to be proven by the plaintiffs and the measure of damages applicable to each is in order.
5. In view of the defendant’s opprobrious conduct, a consideration of his liability for infliction of emotional distress is to be expected on a new trial. Recovery for such tortious conduct is warranted upon proof of the following:
(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct...;
(2) that the conduct was ‘extreme and outrageous,’ was ‘beyond all possible bounds of decency’ and was ‘utterly intolerable in a civilized community...’;
(3) that the actions of the defendant were the cause of the *154 plaintiffs distress . . .; and
(4) that the emotional distress sustained by the plaintiff was ‘severe’ and of a nature ‘that no reasonable man could be expected to endure it.’
Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976). See also, Redgrave v. Boston Symphony Orchestra, Inc., 557 F. Supp. 230 (D.C.Ma. 1983). Where the defendant’s conduct is intentional or reckless, recovery may be had for emotional distress alone without proof of physical harm. Agís at 144. Conversely, evidence of bodily harm resulting from emotional distress must be submitted by the plaintiff if the defendant’s conduct is deemed merely negligent. Payton v. Abbot Labs, 386 Mass. 540, 555-556 (1982) and cases cited. Such physical harm should be “manifested by objective symptomatology and substantiated by expert medical testimony.” Payton at 556. Finally, the resulting emotional distress must be reasonably forseeable, unless the defendant “knew or should have known of special factors affecting the plaintiffs response to the circumstances of the casq," Payton at 556, as, in the instant case, the plaintiffs’ advanced age and emotional attachment to their life long home.
The defendant’s liability for the infliction of emotional distress presents an unqualified question of fact for the trial court if “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Boyle v. Wenk, 378 Mass. 592, 593 (1979). A finding of a defendant’s liability on this or any other factual issue cannot be reversed on appeal unless the extremely rare case is presented in which a dearth of evidentiary support for the trial court’s finding renders unavoidable a firm conviction that a mistake has been committed. Davenport v. Broadhurst, 10 Mass. App. Ct. 182, 185 (1980).
The elements of damage for infliction of emotional stress include lost income, medical and psychiatric expenses and past, present and future pain and suffering. Simon v. Solomon, at 109. An action for this tort survives the death of both the injured party and the tortfeasor. Harrison v. Loyal Protective Life Ins. Co., 379 Mass. 212, 218 (1979).
6. The report before this Division discloses evidence of extensive bulldozing, road and foundation work by the defendant’s crews on and around plaintiffs’ Lot 41 which resulted, inter alia, in a closing of the well which supplied water to the plaintiffs and which cut off any practical access to the plaintiffs’ home. Such evidence is alone sufficient to forecast a probable finding after retrial of the defendant’s liability under G.L. c. 186, § 14.[2] In that event, the defendant would be answerable in statutory damages for the natural consequences of any conduct which seriously impaired, much less terminated, the plaintiffs’ peaceful enjoyment of their home. Blackett v. Olanoff 371 Mass. 714, 716 (1977); Winchester v. O’Brien, 266 Mass. 33 (1929); Lowery v. Robinson, 13 Mass. App. Ct. 982 (1982).
A plaintiffs recovery under G.L. c. 186, § 14 should, in addition to any damages awarded for emotional distress or other personal harm encompass property loss for the use and occupancy of the leased premises and all other out-of-pocket expenses.[3] An appropriate measure of damages for the total *155 deprivation of the use and occupancy of leased premises is the difference between the value of the premises when habitable and the zero value of the premises upon termination of the tenant’s quiet enjoyment. The rent agreed upon by the parties may constitute some evidence of the original value of the leased premises. Boston Housing Auth. v. Hemingway, 363 Mass, 184, 203 (1973); Miskolczi v. Wilson, 6 Mass. App. Ct. 861 (1978); McKenna v. Begin, 3 Mass. App. Ct. 168, 171 (1975); appeal after remand, 5 Mass. App. Ct. 304 (1977). As in any breach of contract case, tenants are ultimately entitled to recover full compensation for the difference between the value of what they should have received under the lease and the value of what they ultimately received. Charles E. Burt, Inc. v. Seven Grand Corp., 340 Mass. 124, 130 (1960); McKenna v. Begin at 309.
6. Finally, the trial court’s finding for the plaintiffs herein after retrial should also result in an award of costs and reasonable attorneys fees as provided in G.L. c. 186, § 14. The determination of what constitutes a reasonable fee is “largely discretionary” with a trial justice, Patry v. Liberty Mobilhome Sales, Inc., 15 Mass. App. Ct. 701, 707 (1983); Homsi v. C.H. Babb Co., 10 Mass. App. Ct. 747, 748 (1980), and will not ordinarily be disturbed on appeal in the absence of an abuse of discretion. Meghreblian v. Meghreblian, 13 Mass. App. Ct. 1021, 1023-1024 (1982).
The court’s award of $3,000.00 for counsel fees through the end of the first trial was not patently excessive. However, the “inherently factual nature of the process involved in determining such fees generally requires a hearing thereon” or some evidentiary submission. Weinstein v. Steigman at 288. In assessing reasonable fees for legal representation of the plaintiffs during all stages of trial and appellate proceedings through the conclusion of the new trial, the court should give due consideration to the following relevant factors:
nature of the case and the issues presented; the time and labor required; the amount of damages involved; the result obtained; the experience, reputation and ability of the attorney; the usual price charged for similar services by other attorneys in the same area; and the amount of awards in similar cases.
Linthicum v. Archambault, 379 Mass. 381, 389 (1979).
7. The trial court’s judgment for the plaintiffs on their complaint is vacated. A new trial is hereby ordered. The court’s judgment for the plaintiffs on the defendant’s counterclaim is affirmed and shall constitute the law of the case on retrial.

 This statute imposes civil and criminal penalties upon any landlord who “directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant.”

 When damages are assessed for emotional distress, use and occupancy and other consequential losses, an additional award for interference with quiet enjoyment is improperly duplicative. See Simon v. Solomon, at 108-109.