MAYRA SANTANA & others[1] vs. REGISTRARS OF VOTERS OF
WORCESTER & another.[2]

Worcester. September 14, 1983. — November 4, 1983.

Present: HENNESSEY, C.J., WILKINS, NOLAN, & LYNCH, JJ.

*Elections. Practice, Civil, Summary judgment.*

Language of G. L. c. 51, § 10A, providing that blank resident listing
forms be "furnished" by municipal registrars of voters to the owners of
multidwelling units was correctly interpreted as requiring the
registrars to act affirmatively either by delivering the forms to the
building owners or by delivering notice to them of the availability of
the forms, along with notice of their statutory duties. [355]

A judge correctly concluded that previously registered voters, whose
names had been dropped from the city's voting list for failure to re-
spond to registrars' inquiries concerning their status, were entitled to
vote in accordance with the certificate procedures established by G. L.
c. 51, § 59. [355]

Where a judge correctly concluded that the plaintiffs in an action against
a city's registrars of voters were entitled to vote in accordance with the
certificate procedures established by G. L. c. 51, § 59, irrespective of
whether they had responded to inquiries from the registrars as to their
status, an affidavit delineating the registrars' practices as to such in-
quiries raised no genuine issue of material fact precluding partial sum-
mary judgment in the plaintiffs' favor. [356]

CIVIL ACTION commenced in the Superior Court
Department on July 29, 1980.

---

[1] The other plaintiffs are Rosa Maldonado and Jeffrey Jenkins, on
behalf of themselves and all other persons similarly situated. A motion to
intervene was allowed on December 11, 1981, as to four additional plain-
tiffs. We acknowledge the participation of the Secretary of the Com-
monwealth as amicus curiae.

[2] The defendants, John W. Spillane, Robert J. O'Keefe, Robert P.
Reidy, and Joseph W. McDonough, are sued both individually and as
registrars of voters of the city of Worcester. The city of Worcester is also a
party defendant.

Following the decision of this court reported in 384 Mass. 487 (1981), a motion for partial summary judgment was heard by *Mulkern, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*William F. Scannell, Jr.,* Assistant City Solicitor, for the defendants.

*Steven H. Kommel* for the plaintiffs.

*David E. Sullivan,* for Secretary of the Commonwealth, amicus curiae, submitted a brief.

NOLAN, J.  This is the second time within slightly over two years that the jurisdiction of this court has been invoked in the same dispute.  See *Santana* v. *Registrars of Voters of Worcester,* 384 Mass. 487 (1981) (*Santana I*).  In its present posture, the defendants, registrars of voters of Worcester and the city of Worcester (registrars) appeal the partial summary judgment entered for the plaintiffs.  The plaintiffs are previously registered Worcester voters who have been dropped from the city's voting list and denied the opportunity to vote by certificate procedures.  In granting the plaintiffs' motion for partial summary judgment,[3] the judge in the Superior Court ordered the registrars to establish voting procedures which will conform to the requirements of G. L. c. 51, § 10A and § 59.  We perceive no error in the judgment, and we affirm.

Section 10A of G. L. c. 51 requires owners of multidwelling units to complete resident listing forms and deliver them to the registrars.  This practice is intended to enable the registrars to keep accurate and current the city's voting list. An owner's failure to comply with § 10A may result in a voter's being dropped from the city's voting list.  The trial court ordered the registrars either to deliver these forms to building owners or to deliver notice of the availability of the forms to the building owners, along with notice of the owners' statutory duties.  The registrars claim error in the

---

[3] It is partial summary judgment because the issue of damages is not part of the judgment.  See *Santana I, supra* at 492.

judge's reading of the statute, arguing that the practice of simply making forms available to those who inquire about them satisfies § 10A, which provides that blank forms shall be "furnished" by the registrars.

The registrars also allege error in the judgment that previously registered voters who have been dropped from the city's voting list, regardless of whether they failed to respond to the city's voter "drop" notice procedures, be permitted to vote in accordance with the certificate procedures described in G. L. c. 51, § 59, upon presentation of proper identification and verification by the presiding official at the polling place. The registrars argue that because the plaintiffs' names no longer appear on the city's voting list, they are no longer "voters," and thus are not entitled to vote by certificate procedures under § 59.

Finally, the registrars assert that an issue of material fact remains as to whether follow-up communications with the plaintiffs gave them notice that they would be dropped from the voting list.

1. *Section 10A.* The judge reasoned that the duties imposed on multidwelling unit owners by virtue of § 10A are not likely to come to their attention absent some affirmative effort on the part of the registrars. The judge ruled that the statutory language that blank forms be "furnished" by the registrars imports more than a passive receptivity to inquiry. He correctly read "furnish" as connoting an obligation to provide or to supply. See *Panasuk's Case,* 217 Mass. 589, 593 (1914). This judicial interpretation recognizes the risk to voters who are overlooked, yet imposes no insurmountable burden on the registrars.

2. *Section 59.* In finding no statutory requirement that a voter be without fault in order to avail himself of certificate voting procedures under G. L. c. 51, § 59, the judge implicitly refused to adopt the registrars' view that a nonlisted voter was no longer a "voter" protected by § 59. The judge's conclusion correctly reflects the "strong tradition of resolving voting disputes, where at all possible, in favor of the voter." *Santana I, supra* at 491. The importance of the franchise is indisputable.

3. *Summary judgment.*  A person is entitled to summary judgment if he demonstrates (1) that there is no genuine issue as to any material fact, and (2) that he is entitled to judgment as matter of law.  The registrars rely on the affidavit of Robert J. O'Keefe to show a genuine issue of material fact (Mass.R.Civ.P. 56[c], 365 Mass. 824 [1974]). Their reliance is misplaced because the affidavit does not aver facts from which a triable issue surfaces.  The affidavit delineates only a practice of the registrars.  It does not even suggest that such a practice was followed with respect to the plaintiffs in this case.  See *Slaven* v. *Salem,* 386 Mass. 885, 890 (1982).  However, even if we could read the affidavit as setting forth facts which constitutes a genuine issue as to whether the plaintiffs received drop notices, we are not persuaded that this issue is material.  *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 556-559 (1976).  The judge correctly perceived that there is no "no-fault" standard implied in § 59.  See 950 Code Mass. Regs. 51.03(5), 356 Mass. Reg. 54, 56 (Mar. 24, 1983).  Thus, the failure of a voter to respond to inquiries by the registrars concerning his status is not sufficient to bar him from voting by certificate, provided the voter can satisfy the requirements of an earlier registration, current residence, and proper identification. Therefore, the receipt of drop notices by the plaintiffs is not a material fact.  Cf. *Noyes* v. *Quincy Mut. Fire Ins. Co.,* 7 Mass. App. Ct. 723, 723-726 (1979).

We are likewise satisfied that the judge's partial summary judgment was correct as a matter of law.  In *Santana I, supra* at 491, we construed §§ 10A and 59, in the form urged by the plaintiffs and adopted by the judge.

*Judgment affirmed.*