JANE DOE & another[1] vs. NEW BEDFORD HOUSING
AUTHORITY & another.[2]

Bristol. November 2, 1993. - March 14, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Housing. Housing Authority. Landlord and Tenant,* Habitability, Injunc-
tive relief, Landlord's liability to tenant or one having his rights, Quiet
enjoyment, Safety requirements. *Nuisance.*

In an action brought by tenants against a housing authority generally al-
leging that they are plagued by unlawful drug activity in the external
common areas of their housing projects, the judge incorrectly granted
summary judgment in favor of the defendant on the plaintiffs' claim
under G. L. c. 121B, §§ 32C and 32D, where the plaintiffs alleged un-
disputed facts sufficient to make out a cause of action and where the
defendant did not meet its burden of showing absence of any genuine
issue of material fact. [276-279] LYNCH, J., dissenting.

In a tenants' claim against their landlord for breach of the implied war-
ranty of habitability, alleging that that warranty required the landlord
to provide security and that the warranty was breached because unin-
vited persons were present in the external common areas of the prem-
ises and engaging in unlawful drug activity and the landlord failed to
take any action, the judge correctly granted summary judgment for the

[1]Jane Roe. On interlocutory appeal pursuant to G. L. c. 231, § 118
(1992 ed.), a single justice of the Appeals Court allowed the plaintiffs'
motion for impoundment which the Superior Court judge had denied. This
issue is not before us; we shall continue to refer to the plaintiffs with
pseudonyms.

The plaintiffs requested that this action be certified as a class action.
They purport to represent "all tenants, and lawful residents, in the
Shawmut Village and Satellite Village public housing projects." The
Superior Court judge did not rule on this request.

[2]The executive director of the New Bedford Housing Authority. We
shall refer to a single defendant.

We acknowledge the amicus briefs filed by the Boston Housing
Authority and the Massachusetts Union of Public Housing Tenants. The
motion of the Lawrence Housing Authority to join in the amicus brief of
the Boston Housing Authority is allowed.

defendant where the plaintiffs did not allege or show any physical defect in the common areas within the scope of the implied warranty of habitability. [279-284]

In a civil action, a Superior Court judge erred in granting summary judgment in favor of the defendant housing authority on the plaintiff tenants' claim for violation of the covenant of quiet enjoyment set forth at G. L. c. 186, § 14, where the plaintiffs alleged the loss of use of external common areas of their public housing project by reason of unlawful drug activity by uninvited persons on the premises and where there remained disputed issues of fact with respect to what the landlord did, failed to do or permitted to be done with respect to the unawful activity. [284-288]

Tenants of a housing authority were not entitled to maintain a claim for nuisance against their landlord. [288-289]

CIVIL ACTION commenced in the Superior Court Department on July 2, 1990.

The case was heard by *Chris Byron,* J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Christopher R. Whittingham (Timothy R. McGuire* with him) for the plaintiffs.

*Mary Alice McLaughlin* for the defendants.

*Charles Harak & Annette R. Duke,* for Massachusetts Union of Public Housing Tenants, amicus curiae, submitted a brief.

*Martin J. Rooney & Fradique A. Rocha,* for Boston Housing Authority, amicus curiae, submitted a brief.

LIACOS, C.J. The plaintiffs appeal from an order of a judge in the Superior Court granting the defendant's motion for summary judgment. On appeal, the plaintiffs argue that the judge below improperly granted summary judgment on their four causes of action: (1) a statutory cause arising from G. L. c. 121B, §§ 32C and 32D (1992 ed.); (2) breach of the warranty of habitability; (3) breach of the covenant of

quiet enjoyment; and (4) nuisance.[3] We affirm the granting of summary judgment on the second and fourth causes of action, but reverse on the first and third.

The relevant facts are these. The plaintiff Jane Doe is a tenant of the defendant New Bedford Housing Authority. She lives at the Shawmut Village public housing project in New Bedford, owned and operated by the defendant and consisting of 170 units in "two-story garden apartments." The plaintiff Jane Roe is also a tenant of the defendant. She lives at the Satellite Village public housing project in New Bedford, owned and operated by the defendant and consisting of 146 units in "two-story garden apartments."

Both housing developments are plagued by unlawful drug activity which occurs in external common areas of the developments. The record reflects that those persons involved in the drug activity on the premises are both tenants and nontenants. The record further reflects that the defendant has attempted, pursuant to a standard provision in its leases, to evict those tenants who are involved in drug activity. The record reveals little or no action on the part of the defendant to remove nontenants. Police patrols in the area are infrequent.

The plaintiffs assert that the crowds of people engaged in drug dealing are so large that the streets and sidewalks of the development are unusable and that the crowds create noise and disturbances and litter the premises with drug paraphernalia. In addition, the plaintiffs contend that pervasive atmosphere of crime prevents them from leaving their apartments at night, from allowing their children to play freely around the developments, and generally from living peacefully and enjoyably in their homes. Both plaintiffs have experienced threats and acts of violence perpetrated against them and their families which they characterize as retribu-

---

[3]In their complaint, the plaintiffs asserted a cause of action under the United States Housing Act, 42 U.S.C. § 1437 (1988). The plaintiffs failed to argue this claim in their brief and, in their reply brief, expressly waived "any claims based upon a federal cause of action in warranty of habitability or quiet enjoyment." Accordingly, we do not address the Federal claim.

tion for their involvement in this lawsuit by those engaged in the unlawful drug activity.

The defendant moved for summary judgment and a judge in the Superior Court granted the motion. The plaintiffs appealed. We granted the plaintiffs' application for direct appellate review.

1. *G. L. c. 121B, §§ 32C and 32D.* The plaintiffs contend that the judge erred in granting summary judgment for the defendant on their claim under G. L. c. 121B, §§ 32C and 32D.[4] We agree with the plaintiffs.

---

[4]General Laws c. 121B, § 32C (1992 ed.), provides:

"Whenever a person who is not a member of a tenant household has, on or near a public housing development or a subsidized housing development: (*a*) caused serious physical harm to a member of a tenant household or employee of the landlord, (*b*) intentionally, willfully, and repeatedly destroyed, vandalized, or stolen property of a member of a tenant household or of the landlord (*c*) intentionally and willfully destroyed, vandalized, or stolen property of a member of a tenant household or of the landlord and attempted to seriously physically harm a member of a tenant household or employee of the landlord (*d*) possessed or carried a weapon in violation of section ten of chapter two hundred and sixty-nine or possessed or used an explosive of infernal machine, as such is defined in section one hundred and two A of chapter two hundred and sixty-six with the exception of firecrackers or violated any other provision of section one hundred and one, one hundred and two, one hundred and two A or one hundred and two B of chapter two hundred and sixty-six; (*e*) unlawfully sold or possessed with intent to distribute a controlled substance established as class A, B, C, or D in section thirty-one of chapter ninety-four C; or (*f*) committed or repeatedly threatened to commit a battery upon a person or damaged or repeatedly threatened to commit damage to the property of another for the purpose of intimidation because of said person's race, color, religion, or national origin; the landlord of such premises may bring a civil action for injunctive or other appropriate equitable relief in order to prohibit said person from entering or remaining in or upon the public or subsidized housing development, unless there is cause to believe that such unlawful conduct is unlikely to continue or to pose a serious threat to the health or safety of the development, the tenant households at such development, or the employees of the landlord."

General Laws c. 121B, § 32D (1992 ed.), provides:

"A tenant or member of a tenant household in a public or subsidized housing development whose health or safety has been seriously threatened as described in section thirty-two C, and where there is reasonable cause to believe that such unlawful conduct will continue to pose a serious threat to his health and safety *may institute and prosecute in his own name and on*

Section 32C authorizes the owner landlord of public or subsidized housing to seek an injunction prohibiting a person engaged in certain unlawful activity from entering or remaining on or near the landlord's property. Section 32D permits a tenant to file a civil action requiring the landlord to take action pursuant to § 32C.

The plaintiffs characterize §§ 32C and 32D as a "statutory obligation to provide adequate security to . . . tenants." However, the statutes clearly allow the landlord to file an action to enjoin the presence on the premises of a person engaged in certain unlawful conduct and also allow a tenant to file an action to require the landlord to bring such an action. Although the language of § 32D is clear that it "does not limit any existing *nor create any new* civil or criminal liability," the granting of summary judgment on the claim under c. 121B, §§ 32C and 32D, was improper because the plaintiffs asserted a valid claim in their complaint and the defendant did not meet its burden of showing absence of any genuine issue of material fact and entitlement to judgment as a matter of law. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

The plaintiffs alleged in their unverified complaint[5] that nontenants gather at the housing developments to engage in the buying and selling of drugs and that there is reasonable cause to believe that such unlawful conduct would continue to pose a serious threat to the plaintiffs' health and safety. They further alleged that the defendant had notice of this unlawful conduct but failed to take action under § 32C and that the court was empowered to compel the defendant to take action under § 32C.

*his own behalf or on behalf of other willing household members a civil action requiring the landlord of the public or subsidized housing development to seek injunctive and other appropriate relief as provided in section thirty-two C,* provided that the landlord of the public or subsidized housing development has actual or constructive notice of said unlawful conduct. . . . This paragraph does not limit any existing nor create any new civil or criminal liability." (Emphasis supplied.)

[5]The plaintiffs submitted affidavits that recited facts in support of their claim under c. 121B.

The defendant argues that the plaintiffs' complaint did not contain a specific request that the court order the defendant to take action under § 32C, but, rather, contained a request that the court order the defendant to provide security against the unlawful acts described in § 32C. We agree that the plaintiffs specifically did not request an order compelling the defendant to take action under § 32C, but we note that the complaint contained a general prayer for relief. In addition, the plaintiffs alleged undisputed facts sufficient to make out a cause of action under § 32D and also referred to the court's power to issue an order compelling the defendant to take action pursuant to § 32C. Given the liberality with which we read complaints in the Commonwealth, see, e.g., *Santana* v. *Registrars of Voters of Worcester*, 384 Mass. 487, 491 (1981), *S.C.*, 390 Mass. 353 (1983), we conclude that the plaintiffs' complaint sufficiently stated a cause of action and request for relief under the statute.

The defendant also argues that the plaintiffs' failure to provide names of nontenants engaging in unlawful acts was fatal to the plaintiffs' c. 121B claim. We respond to this argument by noting that the express language of § 32D does not require the plaintiffs to provide the landlord with names of specific persons; it requires that the landlord have "actual or constructive notice of *[the] unlawful conduct*" (emphasis added). G. L. c. 121B, § 32D. Moreover, the defendant does not set forth any argument regarding either the reason or the logic by which we should infer such a requirement from the statute.[6]

---

[6]The defendants suggest that § 32C is "specifically limited to equitable remedies to keep *a named non-tenant* off the subject premises." This likely is correct, since the statute refers to "a person" and "said person," G. L. c. 121B, § 32C, and since an injunction can be issued only against specified persons. See Mass. R. Civ. P. 65 (d), 365 Mass. 824 (1974). Section 32D, however, which confers on tenants a cause of action to compel the landlord to act pursuant to § 32C, contains no language expressly putting on tenants the burden of ascertaining the names of those "persons." In the absence of such language, and lacking the benefit of any argument that the Legislature intended the burden to be on the tenants, we decline to assign that burden to tenants.

Summary judgment may be granted only when the moving party demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c). *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 808-809 (1991). The defendant did not meet this burden as to the plaintiffs' claim under G. L. c. 121B, § 32D, since there are genuine issues of fact remaining.

On remand, the plaintiffs will have to prove the elements of § 32D: unlawful conduct as described in § 32C occurring on the premises; serious threat to the plaintiffs' health or safety as a result of said conduct; reasonable cause to believe that the unlawful conduct will continue to pose a serious threat; and actual or constructive notice to the landlord of the unlawful conduct. In addition, since the exclusive remedy under § 32D is an order requiring the landlord to take action under § 32C, and since it would be a waste of judicial resources to issue a § 32D order with which the landlord could not possibly comply, the plaintiffs must show that the landlord knows or can discover by reasonable effort the identity of those persons sought to be enjoined under § 32C.

2. *Warranty of habitability.* The plaintiffs argue that the judge erroneously granted summary judgment for the defendant on their claim for breach of the warranty of habitability.[7] They argue that the warranty of habitability requires the landlord to provide security for the premises, and that this warranty was breached because uninvited persons were present on the premises, engaging in unlawful activity, and the defendant failed to take any action. We conclude that the judge correctly granted summary judgment.

In 1973 this court recognized that the essence of the modern day leasing transaction was to provide a dwelling suitable for occupation. *Boston Hous. Auth.* v. *Hemingway,* 363

[7]In their complaint, the plaintiffs asserted a cause of action based on express and implied warranties of habitability. On appeal, the plaintiffs address only the implied warranty claim. We therefore consider the express warranty claim waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

Mass. 184, 196-197 (1973). In *Hemingway, supra* at 197-198, we agreed with the reasoning of the court in *Javins* v. *First Nat'l Realty Corp.*, 428 F.2d 1071, 1078-1079 (D.C. Cir. 1970):

> "It is overdue for courts to admit that these [old common law] assumptions [that a property conveyance was the essential objective of the transaction] are no longer true with regard to all urban housing. Today's urban tenants, the vast majority of whom live in multiple dwelling houses, are interested, not in the land, but solely in 'a house suitable for occupation.' Furthermore, today's city dweller usually has a single specialized skill unrelated to maintenance work; he is unable to make repairs like the 'jack-of-all-trades' farmer who was the common law's model of the lessee. Further, unlike his agrarian predecessor who often remained on one piece of land for his entire life, urban tenants today are more mobile than ever before. A tenant's tenure in a specific apartment will often not be sufficient to justify efforts at repairs. In addition, the increasing complexity of today's dwellings renders them much more difficult to repair than the structures of earlier times. In a multiple dwelling repair may require access to equipment and areas in the control of the landlord. Low and middle income tenants, even if they were interested in making repairs, would be unable to obtain any financing for major repairs since they have no long-term interest in the property.'

See *Young* v. *Garwacki*, 380 Mass. 162, 164-169 (1980) (reviewing the evolution of common law principles pertaining to the relationship between landlord and tenant). We adopted the rule that in all rentals of premises for dwelling purposes, there is implied a warranty that the premises are fit for human occupation. *Hemingway, supra* at 199. Under this warranty of habitability, the landlord warrants "that at the inception of the rental there are no latent [or patent] defects

in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable." *Id.*, quoting *Kline* v. *Burns*, 111 N.H. 87, 92 (1971).

The language from *Hemingway* quoted above suggests that the scope of the warranty of habitability includes only the physical maintenance and repair of a dwelling unit, because the discussion focused on the inability and lack of incentive of modern day tenants to maintain and repair the dwelling units they rent. *Hemingway*, *supra* at 197-198. In addition, we previously have noted that the minimum standards of the warranty of habitability are measured by applicable building and sanitary codes, but we have left open the question whether the scope of the warranty is broader than the announced minimum standards. *Berman & Sons* v. *Jefferson*, 379 Mass. 196, 201 n.9 (1979). Today the plaintiffs ask us to expand the scope of the warranty so that it is breached by the presence on the premises of uninvited persons engaged in unlawful conduct. We decline to do so, and leave open the question posed in *Berman & Sons*, *supra*, for another day.

The plaintiffs have pointed to no case in which a landlord was found to have breached the warranty of habitability as a result of a nonphysical "defect" in the premises, and our own review of our case law and that of other jurisdictions likewise reveals no such case. But see *Pippin* v. *Chicago Hous. Auth.*, 78 Ill. 2d 204, 214 (1979) (Clark, J., concurring in part and dissenting in part) (*"Safe* encompasses both the physical and social conditions of the premises" [emphasis in original]). The plaintiffs rely on *Trentacost* v. *Brussel*, 82 N.J. 214 (1980), where the Supreme Court of New Jersey held, in general terms, that the warranty of habitability included the provision of reasonable measures of security. *Trentacost*, *supra* at 227-228. In *Trentacost*, however, the plaintiff was attacked in the hallway of an apartment building that had no lock on its front door. *Id.* at 218. The court found that the

landlord breached the warranty because he failed to secure the front door in any way.[8] *Id.* at 228.

The relevant housing code in Massachusetts requires that a residential building have a secure, locking front door. 105 Code Mass. Regs. § 410.480 (1986). Thus, despite the broad language in *Trentacost*, the New Jersey court reached the same result that the plaintiff would have received under existing Massachusetts law. See *Berman & Sons, supra* at 201 n.9; *Altschuler* v. *Boston Rent Bd.*, 12 Mass. App. Ct. 452, 456-457 (1981). The reasoning in *Trentacost* does not suggest to us that the New Jersey court intended so greatly to expand the scope of the warranty of habitability as the plaintiffs here argue.[9] See *Trentacost, supra* at 225-228.

We conclude that the implied warranty of habitability is concerned with the provision, maintenance, and repair of the *physical* facilities vital to the use of the leased premises, and is not breached solely by the presence on the premises of uninvited persons engaged in unlawful activities or by the failure to provide security services.[10] See *Pippin* v. *Chicago*

---

[8]In *Trentacost* v. *Brussel*, 82 N.J. 214 (1980), the court also found that the defendant was negligent because he violated the New Jersey administrative regulation requiring that entrance doors on multiple-dwelling buildings be equipped with "heavy duty lock sets." *Id.* at 230-231.

[9]Indeed, the New Jersey court held that the warranty of habitability obliges the landlord to "furnish reasonable safeguards to protect tenants from foreseeable criminal activity on the premises," and that the landlord breached this obligation by failing to secure the front door in any way. *Trentacost, supra* at 228. Under this standard (which we need not adopt for the purposes of this case), we cannot say, based on the record before us, that the defendant here did not take reasonable steps to provide for tenant security as required by the warranty of habitability (there is no allegation that the buildings themselves were not secure; there was adequate lighting in outdoor areas; the defendant had made an agreement with the local police under which the police would patrol the premises regularly). We note, however, that, even if the landlord's obligations are limited under the warranty of habitability, they are not necessarily likewise limited under the other theories asserted by the plaintiffs. See our discussion of G. L. c. 121B, §§ 32C and 32D, *supra* at 276-279, and of the covenant of quiet enjoyment, *infra* at 284-288.

[10]Our conclusion in no way affects the existing liability on the part of landlords under negligence theories, where a tenant or other is harmed by the criminal acts of third parties and the harm resulted from a breach of

*Hous. Auth., supra* at 209 ("decent, safe and sanitary" refers exclusively to physical condition of premises and does not require provision of protection from criminal activities); *Walls* v. *Oxford Management Co.*, 137 N.H. 653, 659 (1993) (warranty of habitability protects tenants against structural defects, but does not require landlord to take affirmative measures to provide security).

As we read the cases cited *infra*, the warranty of habitability does not require, by itself, that the landlord provide security guards or other police services, because such services in no way relate to the maintenance or repair of the physical facilities vital to the use of the premises. Indeed, in cases where courts have discussed landlords' liability resulting from improper security, whether under negligence or contract theories, the factual background of those cases consistently involves situations where the landlord either voluntarily had agreed to provide security services and did so negligently, or failed to provide or to maintain proper security devices such as locks or appropriate external doors. See *Mullins* v. *Pine Manor College*, 389 Mass. 47, 52 (1983) (duty to provide security which college voluntarily assumes must be performed with due care); *Brown* v. *LeClair*, 20 Mass. App. Ct. 976, 979 (1985) (where assailant punched through "flimsy" door which was in violation of State sanitary code, landlord was liable for damages for injuries sustained by tenant); *Kline* v. *1500 Mass. Ave. Apartment Corp.*, 439 F.2d 477, 486-487 (D.C. Cir. 1970) (landlord breached duty to tenant where it failed to maintain security measures that existed at inception of tenancy); *Choy* v. *First Columbia Management, Inc.*, 676 F. Supp. 28, 31 (D. Mass. 1987) (where lease did not contain promise by landlord to provide twenty-four hour security, there was no claim against landlord for

the landlord's tort duty to provide protection, as discussed in our decisions. See, e.g., *Mullins* v. *Pine Manor College*, 389 Mass. 47, 51 (1983). We also note that a landlord can be held liable for personal injury resulting from a breach of the warranty of habitability. *Crowell* v. *McCaffrey*, 377 Mass. 443, 451 (1979). The plaintiffs here make no claim for personal injuries.

injury by third party); *Phillips* v. *Chicago Hous. Auth.*, 89 Ill. 2d 123, 126 (1982) (liability may be imposed on landlord who voluntarily undertakes to provide security measures, but performs undertaking negligently); *Pippin* v. *Chicago Hous. Auth.*, *supra* at 209-210 (where housing authority voluntarily undertook to provide security guards, issue of negligent hiring required trial); *Walls* v. *Oxford Management Co.*, *supra* at 658 (holding that landlord may be liable for criminal attack on tenant only if he is responsible for a known defective condition on the premises that foreseeably enhanced risk of attack, or if he negligently performed a voluntary undertaking to provide security); *Trentacost* v. *Brussel*, *supra* at 223, 228 (landlord negligent and violated warranty of habitability by failing to secure front entrance to building).

The plaintiffs have not alleged or shown any physical defect in the common areas of the rented premises amounting to a breach of the warranty of habitability, that facilitated the presence on the premises of unwanted persons. Therefore, the judge correctly granted summary judgment on the claim for breach of the warranty of habitability.

3. *Covenant of quiet enjoyment.* The plaintiffs argue that the judge erred in granting summary judgment in favor of the defendant on their claim that the defendant violated G. L. c. 186, § 14 (1992 ed.), the so-called "quiet enjoyment" statute. See *Simon* v. *Solomon*, 385 Mass. 91, 94 (1982). The plaintiffs contend that the defendant caused a serious interference with their right of quiet enjoyment by failing to take necessary measures to provide reasonable security. The defendant counters that the covenant of quiet enjoyment is breached only by acts of the landlord or a person or instrumentality subject to the landlord's control[11] and, thus, there is no liability in this case because the defendant is not engaging in unlawful drug activity on the premises or

---

[11]This contention was rejected by the court in *Simon* v. *Solomon*, 385 Mass. 91, 103 (1982).

because the defendant is powerless to control those persons engaged in such activity.

General Laws c. 186, § 14, provides, in relevant part, that "any lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant" shall be punished by a fine or imprisonment, and also shall be subject to liability to the tenant for damages arising from the interference. This section also confers on the Superior and District Courts the authority in equity to restrain violations of its provisions. *Id.*

The covenant of quiet enjoyment protects a tenant's right to freedom from serious interference with his tenancy — acts or omissions that impair the character and value of the leasehold. *Manzaro* v. *McCann*, 401 Mass. 880, 884 (1988). *Ianello* v. *Court Management Corp.*, 400 Mass. 321, 323 (1987). *Leardi* v. *Brown*, 394 Mass. 151, 167 (1985). *Simon* v. *Solomon, supra* at 102. In analyzing whether there is a breach of the covenant, we examine the landlord's conduct and not his intentions. *Blackett* v. *Olanoff*, 371 Mass. 714, 716 (1977). Thus, a landlord may not intend to violate a tenant's right to quiet enjoyment, but may do so nevertheless when the breach is a "natural and probable consequence of what the landlord did, what he failed to do, or what he permitted to be done." *Id.*, and cases cited.

In this case, we have no doubt that, if the plaintiffs truly are unable to use the common areas of the development, including sidewalks, streets, parking lots, and recreation areas within it,[12] then the situation constitutes a serious interfer-

---

[12]The record is not perfectly clear regarding what parts of the premises are at issue. In their complaint and affidavits, the plaintiffs refer to streets and sidewalks in the development. At oral argument, counsel for the defendant referred to streets, parking lots, and basketball courts. It is for the trier of fact to determine what parts of the premises are being used for drug activity. We note that the term "common area" is not confined to shared hallways or lobbies, but can include external areas as well. See *Mirick* v. *Galligan*, 372 Mass. 146, 146-147, 149 (1977) (where landlord placed a dumpster for refuse collection on hilly and uneven terrain approximately eighty feet from apartment building, jury could find that dumpster was placed in a common area). We do not, of course, imply that activities

ence with their quiet enjoyment and substantially impairs the character of the leased premises. Cf. *Ianello, supra* at 323-324 (locking tenant out of common "conference room" which was part of inducement for him to enter into lease constituted breach of covenant). In *Ianello*, the tenant used the conference room merely for exercising. *Id.* at 322. If loss of use of an exercise room constitutes a serious interference with a tenancy, then surely loss of use of sidewalks, streets, parking lots, and recreational areas controlled by the landlord constitutes at least an equally, if not more, serious interference.

The issue on which our decision turns, then, is whether this serious interference with the tenancy of the plaintiffs is the natural and probable consequence of what the landlord did, failed to do, or permitted to be done. *Blackett, supra* at 716. We conclude that this is a question of fact to be determined on remand. There is no authority, however, for the proposition that the defendant *must* provide around the clock security or other police services. In fact, the decision as to the proper means to ensure security is a discretionary decision left to the housing authority. See *Wheeler* v. *Boston Hous. Auth.*, 34 Mass. App. Ct. 36, 39 (1993).[13] Accordingly, we cannot say that the defendant breached the covenant of quiet enjoyment by failing to provide particular security measures. We do believe, however, that if the defendant has failed to take any measures, especially those measures which can be undertaken relatively easily, to remove unwelcome persons

---

on public areas, such as streets and sidewalks, are included within the scope of the warranty of quiet enjoyment.

[13]We cite *Wheeler* v. *Boston Hous. Auth.*, 34 Mass. App. Ct. 36 (1993), here only to support the proposition that the decision whether to provide security guards is a discretionary decision. The defendants argue that the holding in *Wheeler* bars the plaintiffs' entire action. We disagree. *Wheeler* was a personal injury claim grounded in negligence and brought pursuant to the Massachusetts Tort Claims Act, G. L. c. 258 (1992 ed.). *Wheeler, supra* at 36-37. The plaintiffs make no claim for personal injury and assert no negligence cause of action. By its own terms, the Tort Claims Act relates only to actions for "injury or loss of property or personal injury or death." G. L. c. 258, § 2.

from the property that it owns and controls, and the presence of those persons seriously interferes with the tenancy, then the defendant may be liable for a breach of the covenant of quiet enjoyment.

The record before us demonstrates that the defendant has undertaken only two measures to curb the unlawful activity occurring on the premises: the defendant entered into an agreement with the city of New Bedford under which the city provides police services in the same manner and to the same extent that such services are provided to other residents of the city, and the defendant occasionally evicted tenants engaged in illegal drug activities. There is nothing that suggests that the defendant has taken any actions aimed specifically against nontenants engaged in unlawful activity.[14]

Thus, the record suggests that the defendant stood idle, despite continued requests and complaints by the tenants regarding the drug activity on the rented premises. Moreover, the record suggests that the defendant stood idle when there were certain measures that it could have taken relatively easily. Instead, it appears that the defendant did nothing. If the defendant failed to take any action to remove from the area of its control persons engaged in unlawful activity, then the defendant permitted a condition to exist that substantially interfered with the tenancies of the plaintiffs and thus breached the covenant of quiet enjoyment.

We conclude that the judge erred in granting summary judgment for the defendant on the plaintiffs' claim of violation of G. L. c. 186, § 14. There must be a trial to determine what, if any, measures the defendant has taken to remove nontenants engaged in unlawful activity and to determine the seriousness or substantiality of the interference with the tenancies. If the defendant has taken no action or inadequate

---

[14]The defendant points out to us that, in addition to entering into the agreement with the New Bedford police, it has applied for Federal grants for security, provided exterior lighting, and provided a telephone number for maintenance service available twenty-four hours a day. While these actions are commendable, they demonstrate little or no effort on the part of the defendant to remove nontenants engaged in unlawful conduct.

action, despite covenanting that the plaintiffs' right to quiet enjoyment shall not be interfered with, then the plaintiffs will be entitled to judgment,[15] appropriate injunctive relief, costs and reasonable attorney's fees. See G. L. c. 186, § 14.

4. *Nuisance.* The plaintiffs contend that the judge incorrectly granted summary judgment in favor of the defendant on their nuisance claim. There was no error.

"A private nuisance is actionable when *a property owner* creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment of the *property of another*" (emphasis supplied). *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 17 (1987), citing *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 616 (1973), and *Leary* v. *Boston*, 20 Mass. App. Ct. 605, 609 (1985). The private nuisance standard described in *Asiala* requires two different parcels of property: one on which the nuisance condition exists, and another whose occupants are burdened by the nuisance. Thus, although a tenant has a sufficient interest in rented property to bring a nuisance suit for interference with that property, *Connerty* v. *Metropolitan Dist. Comm'n*, 398 Mass. 140, 147 (1986), the suit can be brought only against the owner of

---

[15]The defendant argued that it does not have the financial ability to provide security services and therefore the defendant should have no liability under any of the theories asserted by the plaintiffs. By this argument, the defendant is putting the cart before the horse, since the question of liability is not answered by reference to a defendant's financial circumstances. *Lowery* v. *Robinson*, 13 Mass. App. Ct. 982, 982 (1982). Financial ability may be relevant in fashioning appropriate relief, however.

The defendant's position as a public housing authority also does not affect its liability, because, as we have noted, "[a]lthough in certain respects a public body, the [housing authority] in carrying on its housing functions is submissible to and must abide by the ordinary substantive law of the Commonwealth — the rules of contract, tort, and so forth. . . . In its relations with its tenants, [the housing authority] has rights and duties like those of other landlords: this appears from many decided cases. . . . And, like other landlords, [the housing authority] is under duties as prescribed by G. L. c. 111, §§ 127A-127N, including the duty to maintain residential properties in accordance with the minimal standards established by the State Sanitary Code." (Citations omitted.) *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 727-728 (1980).

some other piece of property. A tenant cannot sue his own landlord for a nuisance on the property that the tenant rents from the landlord.[16] The judge properly granted summary judgment on this claim.

5. *Conclusion.* So much of the order of the Superior Court granting the defendant's motion for summary judgment on the plaintiffs' claim pursuant to G. L. c. 121B, §§ 32C and 32D, and the claim for breach of the covenant of quiet enjoyment, is vacated and the judgment is reversed. The remainder of the order, granting summary judgment on the claim for breach of the warranty of habitability and the claim for nuisance, is affirmed. The case is remanded to the Superior Court for further proceedings in accordance with this opinion.

*So ordered.*

LYNCH, J. (dissenting in part). General Laws c. 121B, § 32D (1992 ed.), confers on tenants of public or subsidized housing the authority to bring an action to require their landlord to seek injunctive or other appropriate relief as provided in G. L. c. 121B, § 32C (1992 ed.).[1]

Section 32D states that the tenant can bring an action against the landlord only "provided that the landlord of the public or subsidized housing development has actual or constructive notice of *said unlawful conduct*" (emphasis supplied). The court concludes today that § 32D does not ex-

---

[16]A suit for breach of the covenant of quiet enjoyment is the proceeding a tenant may bring against his landlord for interference with the use and enjoyment of the rented property.

[1]General Laws c. 121B, § 32C (1992 ed.), provides: "Whenever a person who is not a member of a tenant household has, on or near a public housing development or a subsidized housing development: . . . (*e*) unlawfully sold or possessed with intent to distribute a controlled substance . . . the landlord of such premises may bring a civil action for injunctive or other appropriate equitable relief in order to prohibit said person from entering or remaining in or upon the public or subsidized housing development . . . ."

pressly place the burden of ascertaining the names of offenders on those tenants seeking to avail themselves of the remedies afforded by §§ 32C and 32D. Even assuming that to be true, neither does the statute place on the housing authority the burden of bringing an action for equitable relief against such persons, the identity of whom they have no actual or constructive knowledge.

The court concedes that the housing authority may pursue an injunction pursuant to § 32C only against named nontenants. *Ante* 278 at n.6. A fundamental principle of statutory construction is that, in interpreting any particular provision, it should be construed as part of the statute as a consistent whole. *Walker* v. *Board of Appeals of Harwich*, 388 Mass. 42, 51 (1983). Thus, reading § 32D along with § 32C to which it refers, the logical conclusion is that the housing authority must have actual or constructive notice of the unlawful conduct by a person before a duty arises under §§ 32C or 32D to seek an injunction or other relief. Accordingly, in order to sustain a § 32D action, tenants must either name the offenders or they must show that the housing authority has actual or constructive notice of the identity of such offenders.

The affidavits offered by the plaintiffs do not identify those who have conducted unlawful activities on housing authority common areas, nor do the affidavits assert that the housing authority has actual or constructive notice of the identities of such persons.

I conclude, therefore, that the judge correctly granted summary judgment in favor of the defendant housing authority.