## Nkenge Lynch[1] vs. Stanley K. James.

No. 96-P-0917.

Suffolk. October 9, 1997. - March 19, 1998.

Present: Perretta, Dreben, & Porada, JJ.

*Landlord and Tenant,* Habitability, State sanitary code.

In an action brought by a tenant against her landlord for breach of the implied
warranty of habitability, alleging that the landlord's failure to install stops
or guards on the windows of her apartment resulted in serious injuries to
her child who fell from a window, the judge correctly granted summary
judgment in favor of the landlord where the tenant failed to demonstrate
that such guards or stops were vital to her use of her apartment so as to
raise a question of fact as to the habitability of the apartment, or that the
absence of such guards or stops was a violation of promulgated standards
of habitability. [449-451]

Civil action commenced in the Superior Court Department on
September 9, 1993.

The case was heard by *Barbara J. Rouse*, J., on a motion for
summary judgment.

*Chris Alexander Milne* for the plaintiff.

*Theodore F. Riordan* for the defendant.

Perretta, J. On August 7, 1991, the plaintiff, then three years
old, fell from the window of her third-floor apartment and
sustained serious and permanent injuries. She then brought this
action, through her mother, seeking damages for breach of the
warranty of habitability and violation of G. L. c. 93A, by reason
of the defendant landlord's failure to have installed window
stops or guards on the windows of her apartment.[2] A Superior
Court judge entered summary judgment for the landlord, and
the plaintiff appealed. We conclude that the absence of window

[1]By her mother and next friend, Zsa Zsa Kinsey.

[2]The plaintiff also alleged negligence. A jury found for the landlord on that
count of the complaint, and that matter is not before us on this appeal.

Lynch *v.* James.

stops or guards was neither a violation of promulgated minimum standards of habitability nor a condition sufficient to raise a question of fact as to the habitability of the apartment and affirm the judgment.

It is important to note at the outset that the plaintiff does not claim that the absence of devices which either control the degree to which a window can be opened, such as stops, or guard against anyone or anything from falling from the window, such as bars or grates, rendered her apartment "unfit for habitation." See 105 Code Mass. Regs. § 410.022 (1986).[3] Additionally, there is nothing in the sanitary code which mandates that apartment windows be outfitted with such devices. Rather, the plaintiff relies upon 105 Code Mass. Regs. § 410.023 (1986). That section provides that a "condition which may endanger or materially impair the health *or* safety and well-being of an *occupant* means the existence of a condition listed in 105 [Code Mass. Regs. §] 410.750 of this Code or any other condition so certified by the board of health to be a violation, which may expose or subject to harm, the health or safety and the well-being of an occupant or the public" (emphasis original). The condition complained about by the plaintiff is not listed in § 410.750, and there is nothing in the materials before us to show that it is a condition certified by the board of health to be a violation. The plaintiff argues, however, that because the absence of stops or guards endangered and materially impaired her health and safety, the failure to install them was a breach of the implied warranty of habitability.

Although a "condition that 'may endanger or materially impair the health or safety and well-being of an occupant'. . . is sufficient to violate the warranty of habitability," *Spaulding* v. *Young*, 32 Mass. App. Ct. 624, 627 (1992), not every condition which results in physical injury, such as the improperly installed

---

[3]Section 410.022 reads: "*A condition making a unit unfit for human habitation* is a condition meeting the standard set forth in the Massachusetts General Laws under which a board of health may justify closing down, condemning, or demolishing a dwelling or dwelling unit. It shall mean a violation which poses such immediate harm or threat of harm to an occupant or to the public that other legal remedies cannot be reasonably expected to bring about removal of the condition with sufficient speed to prevent the serious harm or injury to the occupants or to the public."

Although there have been amendments to the sanitary code subsequent to 1986, those amendments did not change the substance of this or any other section cited in this opinion.

kitchen cabinet in *Spaulding, supra,* automatically falls within the scope of § 410.023. Rather, the condition must be one which relates to habitability.

In *Doe* v. *New Bedford Hous. Authy.,* 417 Mass. 273, 281 (1994), the court noted that the question whether the scope of the warranty is broader than the minimum standards set out in the State building and sanitary codes was left open in *Boston Hous. Authy.* v. *Hemingway,* 363 Mass. 184, 200 n.16 (1973). See *Berman & Sons* v. *Jefferson,* 379 Mass. 196, 201 n.9 (1979). The condition that the *Doe* plaintiffs claimed constituted a breach of the warranty of habitability was the presence on the premises of uninvited persons engaged in unlawful conduct. There was no allegation that the building failed to comply with code requirements concerning security. The court declined to expand the scope of the warranty to encompass the plaintiffs' claim and stated that the "implied warranty of habitability is concerned with the provision, maintenance, and repair of the *physical* facilities vital to the use of the leased premises . . ." (emphasis original). *Doe* v. *New Bedford Hous. Authy.,* 417 Mass. at 282.

Although the injury in the present case is alleged to derive from a condition that resulted from the failure to provide a physical facility, that fact alone does not bring it within the scope of the warranty. As expressed in *Doe, supra* at 282, the physical facility must be "*vital* to the use of the leased premises" (emphasis supplied). See *Javins* v. *First Natl. Realty Corp.,* 428 F.2d 1071, 1074 (D.C. Cir.), cert. denied, 400 U.S. 925 (1970) (a case seminal to the development of the implied warranty of habitability, in which the court observed that "[w]hen American city dwellers, both rich and poor, seek 'shelter' today, they seek a well known package of goods and services — a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, secure windows and doors, proper sanitation, and proper maintenance" [footnote omitted]).

Other than the absence of stops or guards, the plaintiff has not alleged or shown any physical defect in the window itself. Because the actual use of stops, even if installed, is optional with the tenant, we do not think that they reasonably can be regarded as *vital* to the use of the unit. Additionally, whether the absence of window guards, described in the plaintiff's submissions on summary judgment as "metal bars attached to

the outside of the building with one-way screws . . . [which] cover the bottom half of the window [and which] firefighters have little difficulty prying . . . off with crowbars," endangers or materially impairs the safety of an occupant of a unit to the extent they should be made mandatory is a matter we think best determined by the Legislature or the appropriate rule-making authorities rather than the courts.

Since the plaintiff did not show that window stops or guards were vital to the use of her unit, the Superior Court judge correctly granted summary judgment for the defendant on the claim for breach of the implied warranty of habitability.[4]

*Judgment affirmed.*

---

[4]Our conclusion is equally applicable to the plaintiff's claim under c. 93A in which she alleges a violation of 940 Code Mass. Regs. § 317 (1)(a) (1986). That regulation essentially provides that it is an unfair and deceptive act or practice for an owner to rent a dwelling which "contains a condition which amounts to a violation of law which may endanger or materially impair the . . . safety, or well-being of the occupant; or . . . is unfit for habitation."