NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1149

HAYASTAN INDUSTRIES, INC.

vs.

CHRISTOPHER GUZ & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Hayastan Industries, Inc., appeals from an amended Housing Court judgment that entered on October 16, 2023, and dismissed Hayastan's claim for possession of a manufactured home owned by Hayastan and occupied by the defendants, Christopher and Angela Guz. The judge found that Hayastan violated G. L. c. 140, § 32J (§ 32J), by terminating the Guzes' tenancy without cause, and he also found in favor of the Guzes on their counterclaims that the § 32J violation was also a violation of G. L. c. 93A; that Hayastan violated Chapter 65 of the Acts of 2020, "An Act Providing for a Moratorium on Evictions and Foreclosures During the COVID-19 Emergency"

---

[1] Angela Guz.

(Chapter 65), by sending a letter implicitly requesting that the Guzes vacate the manufactured home during the pendency of the Statewide moratorium on evictions; that the Chapter 65 violation was also a violation of G. L. c. 93A and G. L. c. 186, § 14; and that Hayastan violated G. L. c. 93A when it included lot fees in the summary process action that had previously been adjudicated to not be owed.  We affirm in part, reverse in part, vacate in part, and remand.

1.  The notice to quit without cause.  Hayastan claims that the judge erred in concluding that the thirty-day notice to quit without cause, dated March 18, 2020, violated the requirement of § 32J that a tenancy in a manufactured housing community be terminated only for a statutorily permitted cause.  We agree.

As the judge recognized in a subsequent summary process action between the parties but failed to address in his ruling on Hayastan's motion to amend the judgment under Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), § 32J is not applicable to the Guzes.  The statute protects "manufactured home owner[s] or person[s] holding under [them]" from being evicted from a lot for no reason -- not from the home.  G. L. c. 140, § 32J.  This is because the manufactured home owner, rather than tenant, is the one responsible for finding a new lot for the structure. Following the Guzes' loan default, Leominster Credit Union (LCU) repossessed the Guzes' manufactured home on February 13, 2020.

2

At that point, the Guzes no longer had any interest in the home. See Bank of N.Y. Mellon v. King, 485 Mass. 37, 49 n.11 (2020). LCU then sold the manufactured home to Hayastan on March 9, 2020. Therefore, the Guzes were not manufactured home owners on March 18, 2020, the date of the notice to quit. The Guzes also were not persons holding under the rights of Hayastan, the owner of the manufactured home. Since the Guzes did not fit within either class of persons protected by § 32J on the date of the notice to quit, the statute does not apply to them. Accordingly, the judge erred in dismissing the claim for possession based on a violation of § 32J and in finding a violation of G. L. c. 93A, and awarding Angela Guz damages thereunder, based on a predicate violation of § 32J.

2. The April 27, 2020 letter. Next, Hayastan claims that the judge erred in ruling that the April 27, 2020 letter violated Chapter 65; which, in turn, resulted in violations of G. L. c. 186, § 14, and G. L. c. 93A. We agree in part and disagree in part.

While in effect, Chapter 65 proscribed, in connection with a "non-essential eviction," the sending of a "notice . . . requesting or demanding that a tenant of a residential dwelling unit vacate the premises." St. 2020, c. 65, § 3 (a) (ii). Hayastan contends that the Guzes were not "tenants" within the meaning of Chapter 65, as they were merely tenants at

3

sufferance.  Hayastan's brief fails to cite legal authority for the proposition that a tenant at sufferance is not a "tenant," so we treat the claim as waived.  Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  With that said, we note that the Guzes were tenants for purposes of Chapter 65; they became tenants at sufferance following the foreclosure of their manufactured home, see Bank of N.Y. Mellon, 485 Mass. at 49 n.11, and a tenant at sufferance "is still a tenant of a sort." Brown v. Guerrier, 390 Mass. 631, 633 (1983).

Hayastan also claims that the April 27, 2020 letter did not violate Chapter 65 because it did not amount to a request to vacate the manufactured home during the eviction moratorium. Although the letter could be read as a suggestion that the Guzes prepare to vacate, we cannot say that the judge erred as a matter of law in finding that the letter implicitly requested that the Guzes vacate the property within the time period of the eviction moratorium.[2]  Specifically, the letter stated:  (1) "I really don't want the sheriff to come to your door with movers and a moving van.  I beg you for the sake of [your child] please

_____

[2] Generally, "we accept the judge's findings of fact unless they are clearly erroneous. . . .  However, where, as here, the judge's findings are based not on an assessment of witness credibility, but 'solely on documentary evidence[,] we may draw our own conclusions from the record.'"  U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 427 (2014), quoting Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980).

4

find another place to live"; and (2) "[p]lease look for alternate housing."  The letter does not stipulate that the potential arrival of the sheriff would only occur after the moratorium ended.  Since the letter left open the possibility that such arrival could occur at any time, the judge did not err in concluding that the letter implicitly requested that the Guzes vacate the premises during the eviction moratorium.

While we agree with the judge that the letter violated Chapter 65, the judge erred in concluding that it amounted to a violation of the so-called quiet enjoyment statute, G. L. c. 186, § 14.  The quiet enjoyment statute protects against "serious interference" with a tenancy, which encompasses "acts or omissions that impair the character and value of the leased premises."  Doe v. New Bedford Hous. Auth., 417 Mass. 273, 285 (1994).  The sending of the April 27, 2020 letter impaired neither the character, nor the value, of the manufactured home at issue.  Therefore, G. L. c. 186, § 14, does not apply.

In the absence of a violation of G. L. c. 186, § 14, we also vacate the judge's ruling that the April 27, 2020 letter violated G. L. c. 93A; vacate the damages awarded on the Chapter 65 claim; and remand to the Housing Court for the limited purpose of determining whether Hayastan's technical violation caused the Guzes a loss, whether economic or noneconomic, as

5

required to recover under G. L. c. 93A.[3]  See Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 802 (2006).

3.  The demand for invalidated lot fees.  Finally, Hayastan claims that the judge erred in finding a violation of G. L. c. 93A due to Hayastan's inclusion of lot fees in the summary process complaint, when such fees had previously been adjudicated to not be owed.  We disagree.

First, Hayastan contends that G. L. c. 93A is not applicable, as "[n]o business relationship existed" between the Guzes and Hayastan to support the conclusion that the demand for lot fees constituted "conduct of . . . trade or commerce" under G. L. c. 93A.  As stated in Billings v. Wilson, 397 Mass. 614, 615-616 (1986), quoting G. L. c. 93A, § 2 (a), persons engaged "in the conduct of any trade or commerce" refers to "individuals

_____

[3] The judge assessed damages for the violation of Chapter 65 under the lens of G. L. c. 186, § 14.  While the judge ruled that the violation of Chapter 65 amounted to an "unfair or deceptive practice under G. L. c. 93A," he did not specify the economic or noneconomic loss caused by the April 27, 2020 letter.  We note that, in discussing damages under G. L. c. 186, § 14, the judge found the following:  "Ms. Guz (who is the only defendant to appear and testify) suffered minimal actual and consequential damages [as a result of the April 27, 2020 letter].  Although Ms. Guz testified that the April 27, 2020 letter 'made her sick' and caused great anxiety, . . . on balance, the distress about which Ms. Guz testified upon receipt of the letter was caused by various factors, including the breakup of her marriage, her financial challenges, and the recent loss of her home to foreclosure. . . . Accordingly, the Court finds that the evidence does not support an award of damages for emotional distress."

acting in a business context."  "[W]hether the transaction takes place in a 'business context' must be determined from the facts of each case, and . . . in each case[,] the court must examine the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties." Moreover, the court must consider whether the landlord's conduct is "motivated by business or personal reasons."  Id. at 616. Here, the judge found as a matter of fact that Hayastan "commenced eviction proceedings approximately nine days after purchasing the home because it intended to make repairs and put it on the market for sale."  This finding supports the conclusion that Hayastan, the corporate owner of the park in which the manufactured home was situated, was motivated by business reasons when it commenced the summary process action, thus amounting to "conduct of [a] trade or business."  G. L. c. 93A, § 2 (a).  Hayastan has failed to establish any personal motivation for the eviction.[4]

---

[4] Hayastan merely claims that the absence of a "rental agreement between the parties to delineate a monthly rental amount," and the Guzes' status as tenants at sufferance, preclude the finding of trade or business conduct.  Hayastan does not cite legal authority to support this proposition; therefore, the argument is waived.  Mass. R. A. P. 16 (a) (9) (A).  Hayastan cites only Lantner v. Carson, 374 Mass. 606 (1978), which, unlike the instant case, involved the dismissal of a G. L. c. 93A claim brought against the sellers of a residential property in their capacities as private individuals.

Hayastan also contends that the judge erred in finding a violation of G. L. c. 93A because Hayastan subsequently amended the summary process complaint to remove the demand for lot fees.[5] We disagree. The elements of G. L. c. 93A were met at the time the summary process complaint was served, see Rafferty v. Merck & Co., 479 Mass. 141, 161 (2018) (identifying four elements of claim); the demand for invalidated lot fees amounted to an unfair or deceptive business practice, see note 5, supra; and the judge found as a matter of fact that this caused Ms. Guz to

_____

[5] Alternatively, Hayastan claims that the inclusion of lot fees in the summary process complaint did not amount to an unfair or deceptive practice because "[t]he cases relating to the correct rent rate to be charged . . . for [the] lot fee[s] were still under appeal at the time, and therefore, the amount of lot rent was still not fully set." Accordingly, Hayastan's argument goes, the demand for uncertain lot fees was "at most negligent[,] but not an intentional wrongful act," as required to support a claim under G. L. c. 93A. Regardless of whether an appeal was pending, the lot fees demanded in the summary process complaint were invalidated by the Housing Court as of the time the complaint was served. A demand for rent adjudicated to not be owed "falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness," Lambert v. Fleet Nat'l Bank, 449 Mass. 119, 126-127 (2007), quoting Wasserman v. Agnastopoulos, 22 Mass. App. Ct. 672, 679 (1986). Moreover, Hayastan knew that the lot fees had been invalidated by the Housing Court. The failure of the company to "apprise [itself] fully of the law," namely, the legal effect of the pending appeal, does not amount to the sort of negligence that precludes liability under G. L. c. 93A. Montanez v. Bagg, 24 Mass. App. Ct. 954, 956 (1987).

8

suffer an emotional injury in the form of lost sleep and anxiety.[6]

Hayastan claims that "Guz suffered no injury" from the initial demand for the invalidated lot fees, as the Guzes "did not [ultimately] have to defend that claim." However, this assertion runs contrary to the judge's finding that Ms. Guz suffered emotional harm from the demand. "Generally, we review factual findings for clear error." Board of Registration in Med. v. Doe, 457 Mass. 738, 742 (2010). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (citation omitted). Marlow v. New Bedford, 369 Mass. 501, 508 (1976). Hayastan does not argue, let alone establish, that the judge committed clear error in finding that the initial demand for invalidated lot fees caused Ms. Guz to suffer emotional distress. We discern no such error.

---

[6] Hayastan also argues that the inclusion of invalidated lot fees in the summary process complaint did not amount to an unfair or deceptive practice in violation G. L. c. 93A because (1) the lot fees were "not the grounds for the notice to quit, which was for no fault"; and (2) Hayastan was simply "follow[ing] the instructions of the form," which provided a blank space for any owed rent. Hayastan's brief fails to cite legal authority in support of either proposition. Therefore, the arguments are waived. Mass. R. A. P. 16 (a) (9) (A).

9

4.  Conclusion.  For the reasons set forth above, we reverse so much of the amended judgment entered on October 16, 2023, that (1) dismissed Hayastan's claim for possession and (2) found in favor of the Guzes under G. L. c. 93A based on a violation of § 32J.  The award to Angela Guz of damages, costs, and attorney's fees under G. L. c. 93A predicated on a violation of § 32J is vacated, and a new judgment shall enter in favor of Hayastan on that counterclaim and on the claim for possession.

We affirm the portion of the amended judgment finding a violation of Chapter 65, but we reverse the finding of a resulting violation of G. L. c. 186, § 14, and we vacate the award of damages to Angela Guz under that statute.  The award of damages, costs, and attorney's fees under G. L. c. 93A for Hayastan's violation of Chapter 65 is also vacated, and that counterclaim is remanded to the Housing Court for a determination whether the April 27, 2020 letter caused an injury sufficient to support recovery under G. L. c. 93A.

Finally, we affirm the portion of the amended judgment finding a violation of G. L. c. 93A due to Hayastan's initial inclusion of lot fees in the summary process complaint, but we

vacate the award of damages, costs, and attorney's fees for the violation, and we remand for recalculation in light of the judge's conclusions on the other issues.

So ordered.

By the Court (Vuono, Meade & Hand, JJ.[7]),

Clerk

Entered: January 16, 2025.

---

[7] The panelists are listed in order of seniority.

11